/ 2

FILED

DEC 2 9 2005

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

In re                                    )    Case No. 05-91185-A-13G
                                         )
BAXTER and TAMARA GILTON,                )    Docket Control No. CBC-1
                                         )
                                         )    Date: December 12, 2005
          Debtors.                       )    Time: 2:00 p.m.
                                         )
_____ )

**MEMORANDUM DECISION**

The motion before the court asks for both relief from the
automatic stay and dismissal.  The movants, however, voluntarily
dismissed the request for relief from the automatic stay at the
first hearing on the motion.  The remainder of the motion argues
the petition was not filed in good faith and therefore should be
dismissed.  The motion to dismiss the petition will be denied for
the reasons discussed below.

Prior to the filing of this case, the debtors, Baxter and
Tamara Gilton, and the movants, Armelin and Maria deSousa,
allegedly entered into a contract obligating the debtors to sell
real property to the movants.  The movants assert that the
debtors breached this agreement, both by contracting to sell it
to another person, Wendel Trinkler, and by refusing to consummate
the sale.  The movants commenced an action in state court
approximately one year ago to compel the debtors to sell the

1  property to the movant.  In the course of that litigation, the
2  debtors threatened to file bankruptcy if the movants did not
3  settle the state court action on terms acceptable to the debtors.
4       When there was no settlement, the debtors filed this case on
5  June 10, 2005.  The movants were listed on Schedule F (general
6  unsecured claims) and on Schedule G (executory contracts and
7  unexpired leases).  The chapter 13 trustee served the proposed
8  plan together with the Notice of Commencement of Case, etc., and
9  a proof of claim form.  The trustee's proof of service reveals
10 that the movants were served with these documents on July 5,
11 2005.
12      The Notice of Commencement of Case informed all parties in
13 interest, including the movants, that objections to the plan had
14 to be filed and served no later than the 14 days following the
15 first meeting.  The plan itself contained the same notice.  The
16 first meeting was concluded on July 27, 2005.[1]
17      Thus, assuming the movants and counsel were not earlier told
18 informally of the filing of the petition, the movants were served
19 on July 5 with a combined notice that the case had been filed,
20 the date of the first meeting, and the deadline for objecting to
21 the plan. They do not dispute receipt of that notice.
22      Because the first meeting concluded on July 27, objections
23 to confirmation of the plan had to be filed and served no later
24 than August 10.  Consequently, the movants and counsel had 36
25
26 _____
27      [1]    The trustee's report of the first meeting reveals that
   an attorney for the other party, Wendel Trinkler, claiming to
   have an executory contract for the purchase of the subject
28 property attended the first meeting.

-2-

1  days of notice of the deadline for objecting to the plan, well in

2  excess of the 25 days of notice mandated by Fed. R. Bankr. P.

3  2002(b).

4      The plan, as permitted by 11 U.S.C. § 1322(b)(7), provided

5  for rejection of the executory contract between the debtors and

6  the movants (as well as the contract with Mr. Trinkler) for the

7  purchase of the subject property.[2]  No objection to confirmation

8  of the plan and the rejection of the executory contracts were

9  raised.  Consequently, on September 26, 2005, the plan was

10  confirmed.  No appeal was taken from the confirmation order and

11  no attempt has been made to vacate the confirmation order on the

12  ground that it was procured by fraud.  See 11 U.S.C. § 1330.

13      This motion argues that the petition was filed in bad faith

14  and should be dismissed.  The factual underpinnings of the motion

15  arose before the plan was confirmed.  Indeed, the relevant facts

16  end with the filing of the petition and the proposing of a plan

17  that rejected the executory contract with the movants.

18      Specifically, the movants assert that the petition should be

19  dismissed because its purpose is to unnecessarily reject the

20  executory contract for the sale and purchase of the subject

21  property to the movants.  The movants view this rejection as

22  unnecessary because the property is encumbered by only $116,163

23  in debt.  Performing the contract with the movants would

24  allegedly give the debtors the funds to pay these claims as well

25  as all unsecured claims.  The movants fear that allowing the

---

[2]      The court comes to no conclusion whether these contracts are actually executory.

-3-

1  rejection of their contract and permitting the case to proceed
2  will leave the movants with nothing and the debtors with the
3  $528,120 equity in the property.

4      The first response to this assertion is that the debtors
5  will not be left with $528,120 in equity.  The property has a
6  scheduled value of $800,000.  In addition to the $116,163 in
7  secured debt, the schedules also list $155,717 in unsecured debt
8  [which is classified in Class 7 of the confirmed plan] that must
9  be paid in full and with interest.  Also, the movants and Mr.
10 Trinkler have the right to file proofs of claim for any damages
11 caused by the rejection of their contracts.  See 11 U.S.C. §
12 502(g).  Assuming their claims are allowed, their claims would
13 also be in Class 7.  Like the other $155,717 in unsecured claims,
14 the claims arising from the rejection will be paid in full and
15 with interest.

16     In order to service the secured debt encumbering the
17 property, to pay the Class 7 claims in full, and to pay the
18 rejection claims, if any, in full and with interest, the
19 confirmed plan requires the debtors to sell subject property.

20     In short, the debtors are not simply rejecting the executory
21 contracts and then walking out of bankruptcy court with the
22 property or its net value.  The property will be sold and the
23 proceeds used to pay the secured debt and all unsecured debts,
24 including any debts owed to the movant and to Mr. Trinkler that
25 are occasioned by the rejection of their contracts.[3]

26

27     [3]    Because no deadline has been set for filing claims by
   those persons, such as movants and Mr. Trinkler, whose executory
28 contracts and unexpired leases with the debtor have been

-4-

1    The second response to the dismissal motion is that it comes

2  too late.  While the motion attempts to draw a distinction

3  between a motion seeking dismissal because the petition, as

4  distinguished from the chapter 13 plan, was filed in bad faith,

5  this distinction, in the context of the facts of this case, is

6  irrelevant.

7    The important distinction is whether the basis for dismissal

8  arose prior to the confirmation of the plan.  See <u>Duplessis v.</u>

9  <u>Valenti (In re Valenti)</u>, 310 B.R. 138, 151 (B.A.P. 9th Cir.

10  2004).  Only when a debtor has concealed facts that prevent a

11  creditor from seeking dismissal of the case prior to confirmation

12  may a creditor seek dismissal based on preconfirmation conduct.

13  In <u>Valenti</u> the Bankruptcy Appellate Panel held that "res judicata

14  will not necessarily defeat a future motion to convert or dismiss

15  . . . under Section 1307(c) based on preconfirmation matters,

16  where the debtor's own conduct (such as concealment) would amount

17  to estoppel to bar that defense."  <u>Id</u>.

18    When a debtor is not eligible for chapter 13 relief under 11

19  U.S.C. § 109(e) [which sets debt limits for chapter 13 debtors],

20  or is misusing the bankruptcy process, creditors must immediately

21  seek dismissal.  The court will not confirm plans in such cases.

22  But, if a creditor, despite notice of the bankruptcy case and

23

24  rejected, the court will set a deadline.  <u>See</u> Fed. R. Bankr. P.

25  3002(c)(4).  In the court's ruling appended to the minutes of the
     hearing, it set January 12, 2006 as the deadline for rejection

26  claims.  On further reflection, the court concludes that this
     would not be sufficient notice.  Parties in interest with such

27  claims shall file them on or before March 13, 2006.  The debtors
     are to give notice of this deadline to all persons who are

28  parties to rejected unexpired leases or executory contracts.

-5-

knowledge of the relevant facts warranting dismissal, waits until after a plan has been confirmed to seek dismissal, they have waited too long.

Eisen v. Curry (In re Eisen), 14 F.3d 469 (9th Cir. 1994), is instructive. In Eisen, a debtor entered into a contract to sell real property to a third party. The debtor reneged and the third party filed a state court action for specific performance. On the eve of trial, the debtor filed his first chapter 13 petition. In that bankruptcy case, the debtor falsely claimed he had no interest in the property and he attempted to reject his contract with the third party. The bankruptcy court concluded the plan had been proposed in bad faith and dismissed the petition. Less than two months later, after the state court action had been reset for trial, the debtor filed another chapter 13 petition and again attempted to reject the contract. The bankruptcy court found that the petition had been filed in bad faith and dismissed it. In affirming the dismissal of the second case, the Ninth Circuit held:

> A Chapter 13 petition filed in bad faith may be dismissed 'for cause' pursuant to 11 U.S.C. § 1307(c). In re Powers, 135 B.R. 980, 991 (Bankr. C.D. Cal.1991); In re Love, 957 F.2d 1350, 1354 (7th Cir. 1992); In re Gier, 986 F.2d 1326, 1329 (10th Cir. 1993). **To determine if a petition has been filed in bad faith courts are guided by the standards used to evaluate whether a plan has been proposed in bad faith.** 11 U.S.C. § 1325(a)(3); Powers, 135 B.R. at 994; Gier, 986 F.2d at 1329.

See Eisen, 14 F.3d at 470 [emphasis added].

This court does not cite Eisen for the proposition that a motion to dismiss a chapter 13 petition must be prosecuted before a plan is confirmed. The opinion in Eisen is silent on this

-6-

issue.   The decision in <u>Valenti</u> disposes of that issue.    Rather,
<u>Eisen</u> is important to this case because it holds that a petition
filed in bad faith necessarily means that any plan is proposed in
bad faith.  So, when a plan is confirmed, something that can only
occur if the plan has been proposed in good faith, it follows
that the petition must have been filed in good faith.  Whenever a
creditor wishes to dispute a debtor's good faith in filing a
petition or proposing a plan based on a debtor's preconfirmation
conduct, it is incumbent on that creditor to raise the issue
before the plan is confirmed, at least when the debtor's
preconfirmation conduct has not been concealed.  Otherwise, if
the assertion of bad faith is not raised prior to confirmation,
the confirmation of the plan precludes the creditor from raising
the issue.

The movants argue that the holding of the bankruptcy court
in <u>In re Powers</u>, 135 B.R. 980 (Bankr. C.D. Cal. 1991), permits
dismissal despite the confirmation of the plan.  This court
disagrees.

<u>Powers</u> is a trial level decision that is not binding on this
court.  The holdings of the appellate courts in <u>Eisen</u> and in
<u>Valenti</u> are binding and they require that this court give effect
to its confirmation of the plan by cutting off belated attempts
at dismissal that are based on facts known prior to confirmation
and that would have prevented confirmation if they had been
timely raised.

Also, if <u>Powers</u> can be read to permit a creditor to seek
dismissal of a case after confirmation of a plan on the basis of
known preconfirmation misconduct, that holding is inconsistent

-7-

1  with <u>Valenti</u> and with many other decisions requiring that motions

2  to dismiss based on a debtor's lack of eligibility for chapter 13

3  relief be raised prior to confirmation.  <u>See</u>, <u>e.g.</u>, <u>U.S. v.</u>

4  <u>Edmonston</u>, 99 B.R. 995, 998-99 (E.D. Cal. 1989) (post-

5  confirmation challenge to Chapter 13 eligibility "is precluded by

6  the doctrine of res judicata unless there is a showing of fraud

7  by the debtor.").

8       Further, implicit in <u>Powers</u> and in the movants' motion is

9  the dubious proposition that a plan may be proposed in good faith

10 even though it is offered in a chapter 13 case that is itself

11 filed in bad faith.  If a petition has been filed to gain unfair

12 advantage over creditors, as argued here, to permit confirmation

13 of the plan is to hand a debtor the instrument for realizing his

14 ill-gotten gain.  Therefore, as recognized by the Bankruptcy

15 Appellate Panel in <u>Valenti</u>, it is incumbent on creditors to raise

16 their objections to the filing of the petition, as well as the

17 plan, before the plan is confirmed.

18      In this case, the movants were given notice of the filing of

19 the petition and the proposed plan.  During the three months and

20 two weeks between the filing of the petition and the confirmation

21 of the plan, the movants did not challenge the debtors'

22 eligibility for, or motivations for seeking, chapter 13 relief,

23 or object to confirmation of the plan.  The plan was confirmed.

24 There is no evidence of any concealment that precluded or impeded

25 the movants in raising objections to the plan or in seasonably

26 moving for dismissal of the petition.

27 ///

28 ///

1   The motion to dismiss comes too late.[4]

2   The third response to the motion is that Mr. and Mrs. Gilton

3   had legitimate reasons for seeking chapter 13 relief.  Both are

4   79 years of age, both have been retired for ten years or more,

5   Mr. Gilton's health is declining, neither has ever before filed a

6   bankruptcy petition, and their household subsists on $2,460 a

7   month in social security and pension benefits.  After paying

8   Spartan living expenses, they will have a mere $100 a month in

9   disposable income.

10   The Giltons' debt, $116,163 in secured claims and $155,717

11   in unsecured claims (not taking into account rejection claims),

12   largely was incurred in connection with an unsuccessful post-

13   retirement attempt to develop a cheese plant.  The confirmed plan

14   requires the contribution of their $100 in monthly disposable

15   income for 36 months in order to pay this debt.  Because this

16   disposable income obviously will not be sufficient to retire the

17   debt, the plan also requires the debtors to contribute a $3,800

18   semi-annual rent payment due them as well as the proceeds from

---

20   [4]    The court realizes that the movants' motion was filed
21   on September 16, 2005, ten days before the confirmation of the
      plan on September 26.  To be considered as an objection to
22   confirmation of the plan, the motion should have been filed and
      served on or before August 10.  Alternatively, because of the
23   absence of timely objections to confirmation, confirmation was
      imminent.  In this circumstance, the court would have been
24   receptive to an application for an order shortening notice for a
      hearing on the dismissal motion so that it could be heard before
25   entry of a confirmation order.  No such application, however, was
      made under Local Bankruptcy Rule 9014-1(f)(3).  Because this
26   court uses a "self-set" calendar, it is incumbent on a party
      making a motion and bringing an objection to seasonably set a
27   hearing.  See www.caeb.uscourts.gov/data/tentrule/lmS_12_02.pdf
28   (Self-set calendar instructions).

1   the sale of the property.  Section 1322(b)(8) permits a chapter
2   13 debtor to supplement disposable income in this fashion.  <u>See</u>
3   11 U.S.C. § 1322(b)(8).  <u>See also</u> <u>In re Gavia</u>, 24 B.R. 573, 575
4   (B.A.P. 9th Cir. 1982) ("[W]e construe [section 1322(b)(8)] as
5   permitting a plan to supplement payments from future income.").

6        Then there is the litigation between the debtors, the
7   movants, and Mr. Trinkler.  The income listed on Schedule I
8   suggests that the debtors do not have the ability to fund the
9   litigation.  And, given that there are two parties, the movants
10  and Mr. Trinkler, claiming a right to buy the property, giving up
11  and selling the property to the movants will not end the
12  litigation.

13       The debtors have real financial problems that are capable of
14  resolution in a chapter 13 bankruptcy.

15       The movants believe that the solution to the debtors'
16  financial problems is to perform, not reject, their executory
17  contract.  If the debtors would sell the property to the movants
18  the debtors could fund their plan with sale proceeds and quickly
19  pay their creditors.  However, to the extent this was a basis for
20  objecting to the plan, it should have been raised before the plan
21  was confirmed.

22       The movants' reliance on 11 U.S.C. § 305(a)(1) as well as 11
23  U.S.C. § 1307(c) does not change the result.  Section 305 gives
24  the court the power to abstain from taking jurisdiction over a
25  bankruptcy petition.  It is usually invoked when a debtor and the
26  creditors have agreed to an out-of-court workout.  Whatever the
27  basis, a dismissal under section 305(a)(1) must be in the
28  interests of both the debtor and the creditors.  <u>See e.g.</u>, <u>In re</u>

-10-

1  <u>Schur Management Co., Ltd.</u>, 323 B.R. 123, 129 (Bankr. S.D.N.Y.

2  2005).  It is not a substitute for a motion under section 1307 or

3  the other dismissal provisions applicable in chapters 7, 11, and

4  12.  <u>Id</u>.  The issue of bad faith must be addressed under section

5  1307(c).  <u>Cf</u>. <u>In re Schur Management Co., Ltd.</u>, 323 B.R. at 129,

6  n. 5.

7      This Memorandum Decision supplants the final ruling appended

8  to the minutes of the hearing.[5]

9      A separate order will be entered.

10 Dated: **29 Dec 2005**

                              By the Court

                              Michael S. McManus, Chief Judge
                              United States Bankruptcy Court

---

[5]    While the court was preparing this Memorandum Decision,
the movants filed a notice of appeal and a motion for leave to
appeal.  The appeal, however, was filed prior to entry of an
order disposing of the motion.  It is premature.  The movants
appear to believe that the minutes of the hearing constitute an
order denying their motion.  The minutes record the appearances
at the hearing and append the court's written ruling.  The
minutes include no order.  Because no order had been entered when
the notice of appeal was filed, the court issued this Memorandum
Decision, supplanting the findings and conclusions in the ruling
appended to the minutes, with its order disposing of the motion.

                              -11-

**CERTIFICATE OF MAILING**

I, Susan C. Cox, in the performance of my duties as a judicial assistant to the Honorable Michael S. McManus, mailed by ordinary mail to each of the parties named below a true copy of the attached document.

Office of the US Trustee
501 I St. Ste 7-500
Sacramento, CA 95814

Cory Chartrand
300 N Palm St
PO Box 709
Turlock, CA 95381-0709

David Johnston
1020 15th St #10
Modesto, CA 95354-1132

Baxter Gilton
12530 Clausen Rd
Crows Landing, CA 95313

Tamara Gilton
12530 Clausen Rd
Crows Landing, CA 95313

Russell Greer
PO Box 3051
Modesto, CA 95353-3051

Dated: December 29, 2005

_Susan C. Cox_
Susan C. Cox
Judicial Assistant to Judge McManus